Curia per
Nott, J.
An act of assembly allows an executor to retain out of the funds of the estate two and a half Per cent. receiving and two and a half per cent. on all moneys paid away, as a compensation for his trouble, care and pains in and about his adminis-antl.ation. It also provides, that a further allowance r be made for any extraordinary care and trouble ; but when a claim shall be made for such further comPensat‘on the question must be tried by a jury in the Court of Common Pleas. It is not to be left to the dis-acret¡on 0f a Judge or Chancellor. It is now contended that there is a difference between services rendered and paid f°r the estate; that the defendant does not ask a compensation for the extraordinary care and trou-hie, but merely that she may be remunerated the expenses she has actually incurred in the course of her administration. And, although it is admitted that the amount of compensation for extraordinary services can only be ascertained by the verdict of a jury, yet it is contended that a Court of Chancery is competent to decree the re *5 imbursement of money actually expended. The distinction is very obvious; and if the question had now for the first time occurred, it might perhaps have been considered as not without its difficulties; but in the case of Snow and others v. Callum, Exec. of Snow, 1 Desaus.. Rep. 542, Chancellor Rutledge, who delivered the opinion of the Court, says, “ upon considering the Master’s report and on examination of the defendant’s accounts, the Court are of opinion, that the charges for travelling expenses, overseer’s wages, &c. which he has allowed to the executor should be struck out; as they are not warranted by the act of the assembly which regulates the allowance therein given to executors, and this Court has uniformly in such cases referred them, for recovery of such charges, to their actions at law on a quantum meruit.”
The execu-cc°0““is* the ordinary he^mnióthe money paid to an accoun-justing his ^executor*1*
That case was determined in the year 1797, and the question appears not then to have been decided for the first time; for it is said, that it had always been the Uniform practice of the Court to refer the parties to their action at law. It appears, therefore, to settle the first question now submitted to this Court ; for we have reason to believe that the practice has been uniform ever since, and it would be dangerous to innovate upon .a practice so long and so well established. I think farther, that the only conclusion that can be drawn from the de-cisión is, that the ordinary expenses of an executor, such as are necessarily incident to his office, are covered by his commissions, and are not to be charged to the estate; and that it is only those expenses which have been occasioned by some extraordinary care and trouble which he is entitled to recover even at law; for it is in those extraordinary cases only that the law allows him the additional compensation. This conclusion, I think, is also to be drawn from the English practice.
In England the Court of Equity allows an executor all his necessary expenses; and the reason is, because *6 the law allows him nothing for his services. And it would be most unreasonable that he should be required to render his services for nothing, and bear his own expenses. Now it must have been the opinion of our Court of Equity that the commissions allowed to an executor were intended as well to defray his expenses as to reward him for his trouble, otherwise (possessing the same power as the Chancellors in England) his expenses might be allowed without referring him to a Court of Law. And the same reason applies here as in England, because by such an allowance the estate might be loaded and rendered of little value.
But it seems, a Court of Equity, without referring may permit an executor to retain for money allowed adjusting ¿¡if-ficult and accountfof whichcome not within the See; as coun-seer’^’i'es" &e.
The same course of reasoning will lead us to a similar result on the other point made in this case. If the five per cent, commissions are intended to cover the ordinary expenses, they must also be intended as a compensation for the ordinary care and trouble of an executor. He cannot be permitted to accumulate expense by employing an agent to perform the most simple and ordinary duties of his office. Where he performs duties not necessarily incident to his office, such for instance as the duties of an overseer, or performs any other extraordinary services> may recover compensation by referring his claim to a Court of Law. So where he pays money to agents for . J , , the performance of duties which do not come within the Pa*e °f office, such as counsel fees, overseer’s wages, and the like, I presume that such charges might be allow- „ „ , , , . ed by a Court of Equity. 1 have no doubt but that an executor might be allowed by a Court of Law, and perhaps by a Court of Equity, to retain money allowed to agents or accountants for adjusting difficult and complicate(l accounts of the estate. But I should not think him entitled either in law or equity to retain for money paid an accountant for settling and adjusting his own accounts. The present demand is for the adjustment of the defendant’s own accounts, and not those of the estate.
An executor shouia make his, annual return of his ac-being complicated.
The accounts of an executor can never become complicated where he does his duty. He is-required to rén-der an annual return to the ordinary of his administration, and if he suffers them to become entangled by his own delay or neglect, he must unravel them at his own ovnonm expense. •
# It is the opinion of this Court that the order of the Chancellor on the two points above made should be versed, and that that part of the Master’s report be x 1 firmed. If the defendant thinks that the nature of the estate was such as to require of her duties which entitled her to further compensation, an issue may be directed to try the question.
Motion allowed(1).

 See the cases collected by Mr Ingraham in the note to the case of Fountaine v. Pellet, 1 Ves. Jun. 339, Am. Edition.